No. 18-20511

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

TOYA M. GIBSON,

Appellant

V.

WAYFAIR INC.

Appellee

---

On Appeal from the United States District Court, The Fifth Circuit,

No. 18-20511, Honorable Carl E. Stewart, Chief Judge Presiding

## APPELLANT'S BRIEF

Pro Se: Toya M. Gibson

7848 Leonora St Houston, Texas 77061 832-368-0762/713-304-3092

## CERTIFICATE OF INTERESTED PERSON

Toya M. Gibson,

v.                                        No. 18-20511

Wayfair INC,

The undersigned counsel of record certifies that the following listed persons

have an interest in the outcome of this case. These representations are made

in order that the Judges of this Court may evaluate possible disqualification

or recusal.

**Appellant**                          **Appellee**

Toya Marnell Gibson                    Wayfair INC.

   7848 Leonora St.                   Counsel for Appellee

   Houston, Texas 77061              Seyfarth Shaw LLP

   Phone: 832-368-0762               Attorney Esteban Shardonofsky

                           700 Milam ,Suite 1400

Toya M. Gibson                         Houston, Texas 77002

## STATEMENT REGARDING ORAL ARGUMENT

I, Appellant Toya M. Gibson respectfully request oral argument. This appeal

will require the Court to honor God and his word. The one and only God that

we are asked to raise our right hand to when taking an oath. Please' search, read and understand each scripture in this Brief. The Bible is written account of God's word to mankind and in scripture it reads:

[John 16:33  I have said these things to you, that in me you may have peace. In the world you will have tribulation. But take heart; I have overcome the world.]   Although we are told that we will have trials and tribulation, no one knows when they will come. When they come, we have to respond to them especially in cases of medical emergencies that prevent us from performing our job duties assigned. Records would show that in Wayfair's Employment Guide under "Dress Code" in Document 37-8, it states that Employees must come to work clean and without any offensive odors. My tooth had ruptured and it was bleeding and highly odorous. During the examination by Dentist John Johnson, he continually coughed. I would of been out of dress code, against policy if I would of come to work after my tooth was bleeding, erupted and cracked. Under the ADA, my impairment of the inability to speak is covered yet the Appellee holds judgment and

received favor from the district court from noting that I did not adhere to company policy and that I should of called in 48 hrs beforehand, as if the time requested was for a vacation. It noted that I should of requested and waited for approval to have the time off that I needed to have emergent oral surgery which was impossible. Additionally, although I had 6 months tenure when I requested the short term leave off, and the Appellee had over the 15 employees needed for ADA consideration and well over 50 employees needed for FMLA approval, they denied me. ADA states an employee does not need to be employed for a full year (12 months), for consideration. Oral argument may assist the Court in resolving these and other issues raised in this lawsuit involving a alleged wrongful termination harassment, religious and genetic discrimination and now possible appealable issues.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS................................i

STATEMENT REGARDING ORAL ARGUMENT..........................ii

TABLE OF CONTENTS................................................................v

TABLE OF AUTHORITIES........................................................13

JURISDICTIONAL STATEMENT..............................................21

STATEMENT OF ISSUES PRESENTED FOR REVIEW.................  22

STATEMENT OF THE CASE......................................................45

SUMMARY OF THE ARGUMENT.............................................57

STANDARD OF REVIEW..........................................................58

ARGUMENT.............................................................................68

a. The Texas Workforce Commission's investigation on record was not acknowledged that cleared me for the decision to grant me benefits where it noted that Justin Brown stated that I did in fact follow policy. Justin Brown was truthful and admitted I followed policy and that they were aware that I was out with a medical condition. I was subsequently granted my benefits

from TWC, but at my expense. I am requesting the "Maximum Potential

Chargeback" from Wayfair. See "Record Excerpts" Letter H; #2 In

Document 26 page 16 of 35 where it reads on line 34 that I prescheduled the

dentist appointment and should of requested October 4th or October 5th off

from work 48 hours in advance to avoid accumulating points. This would

suggest that I didn't follow policy however I did. In #3 according Johnson's

Dentistry Proposed Treatment Plan, it verifies that my initial contact with

the office was on 10-04-2016 the same initial day that I contacted Mr. Quick

via email. Although I needed to go that day, they could not see me until the

following day, October 05, 2016.


**b.** The district court also had record of the initial email from Mr. William

Quick after I contacted him to request time off where it noted that he wrote

in the first line that he understood my plight of dealing with multiple issues.

See "Record Excerpts" H. #4 He clearly acknowledged that he understood

and noted that after we scheduled some time together he could then see if the

time I was asking for could potentially be covered but again, it was not granted. The district court has medical records for me from all 3 dentist and a PCP where it plainly showed that the tooth was damaged with an abscess and needed to be removed which supports my stance that I was in pain, as I noted in the email to Mr. William Quick where I requested' time to alleviate the pain I was in considering I could not speak without pus and blood oozing from my mouth when opened. I was impaired from performing my assigned job detail which was to talk my entire shift . A requirement in the Customer Service Consultant position with Wayfair was to be "fluent". I could not be fluent and immediately contacted all entities so that my former employer could be informed. Additionally, this was an open office setting, we sat 1-2 feet apart which would of exposed people to infected toxins from my mouth. Each time that I would of opened my mouth, both pus an blood would of dripped out. The tooth erupted and cracked. The medical records I submitted supports my claim. In the EEOC report I mentioned how Dentist John Johnson, wearing a mask kept coughing during and after examining me,

even as I left. Very unprofessional however perhaps his response was just.

**c**. The District Court upheld and used the Appellee's record as truth that I missed 36 days in 6 months however, again in the Texas Workforce Commission's investigation to determine the decision of eligibility for benefits, that was submitted as evidence, notes that Justin Brown gave record of my absences as 061616, 062716, 071916, 072016, 080516, 080816, 081016, 090616, 092116 which is 9 days and 100416 through 100716 which is 4 additional days. That is a total of 13 days, not 36. Please note that the Texas Workforce Commission investigation can be used considering I am asking for the "Maximum Potential Chargeback". This is on record and of public record for all to see who searches my name, like potential employers. I have continued to be turned down for employment. I believe in the Summary Judgment hearing it was held as truth, not investigated and used as a reason to not value me as a loyal employee that deserved creditability to give me the benefit to negotiate with the Appellee more in-depth.

d. Considering that I am well over 40 years old, now 46 years old, with minimum education, a minority and have suffered from an additional termination after my former employer, the United States Postal Service received notice from the Defendant/Appellee to surrender my records for discovery, I feel the district court's decision has aided the Appellee to assassinate my character, even if it was unintentional. People and employers hold the courts to high standards. They often respect those entrusted with authority to make life altering decisions. After the USPS was made to surrender my employee records for discovery and the work detail caused me to injure my legs, I was again terminated. My attempts to gain suitable, safe, clean housing and employment has been daunting. My reputation due to the libel has continued to harm my ability to regain my independence and has continued to sever relationships causing me to be called "Welfare Queen" by my Mother and "trash" by my ex-husband. Some of my relatives either own businesses, accountants, realtors, builders, nurses, a Doctor or they are composed of Engineers or retired from working for the Government. I am

now considered as an outcast, initially faced with shame to go around them.

I used the word initially because I am no longer in shame. People who only

understand happiness and patience do not understand joy and faith. Joy

comes from trusting in God's word and living in obedience. Faith is the

unseen, the yet to be. Happiness is dependent on happenstances and patience

has a certain time frame that something should happen. God's time is

different from ours. He sees time through the lens of eternity. We, in a carnal

mindset only understand clocks and schedules. Unintentionally, I rehearse

everything that has happen to me.

e.

Although approved and requested, I was not granted the ability to be given

funding to hire a expert witness nor the ability to be granted the funding to

hire a stenographer for my own deposition. Without a deposition held on my

own behalf, to have record of imperative questions that could have been

asked to support my claim(s), the field was "not level for playing fairly".

(See Record Excerpts H. #12) Clearly it states what I feel the court was well

aware of, that being, there are numerous instances in which such testimony

could be critical.  Without an expert witness in dentistry to explain the

dangers of infectious blood pathogens being exposed, the dangers of not

having access to treatment and the full scope of the procedure of an

extraction, compounded with a present infectious abscess expounding on

and explaining that a tooth is stronger than a bone and also explaining the

turn around time to return to work after an extraction compounded with an

abscess is needed, I feel my account of the severity of the surgery needed

was brushed off.  If in fact the Equal Protection Clause was honored, I could

have been given the decency to have a expert witness appointed. Again, it

reads in  Matthew 7:12 : So in everything do to others what you would have

them do unto you, for this sums up the Laws and the Prophet.

 At this very present moment, I am in dire need for oral emergent care due to

me losing my dental insurance and the inability to pay out of pocket. My

mouth is odorous having an open wound. The work needed, not being done

is exposing others to infectious pathogens and me to possibly getting oral

cancer.  Oral health or lack of can impede relationships from forming, both professional and personal. Anytime someone breath reeks, it suggest something more underlined.

6CONCLUSION………………………...............................................69

7CERTIFICATE OF SERVICE………………………….......................76

8CERTIFICATE OF COMPLIANCE……………………………........... 77

9 SIGNATURE OF COUNSEL……………………………………………81

## Table of Authorities

Authorities: a position that commands such power or right (often in the phrase in authority) such power or right delegated, esp from one person to another; authorization she has his authority. The ability to influence or control others; a man of authority. Since we look to God first in court under oath in order to be pleasing to the court, it's my prayer that along with what I have cited, the following scriptures can be used and aid in supporting what I have shared.

Davis v. Boise Cascade Co., 149 So. 3d 331, 2014 La. App. LEXIS 2345, 14-156 (La.App. 3 Cir. 10/01/14);

**Matthew 7: 12** Therefore all this whatsoever ye would that men should do to you, do ye even so to them: for this is the law and the prophets.

I am Christian and do my absolute best in obedience to God, the same God
we are told to tell the truth under oath in the court of law. I was told that I
was going to be disciplined for giving discounts to customers whom
deliveries were late, no shows, stolen, damaged, lacked all items ordered, or
was not as advertised. I was only being nice as we were told was the reason
we were hired by Al Gonzales in a meeting with over 20 people and
practicing my religion, Christianity. I feel since I was subsequently
terminated I was ultimately discriminated against for practicing it.

Escriba v. Foster Poultry Farms, 793 F. Supp. 2d 1147, 2011 U.S. Dist. LEXIS 59435

**Exodus 20:16** You shall not give false testimony against your neighbor.
To read that scripture is one thing but to be on the receiving end is another.
Many have resulted to taking their life after being subjected to lies. While
suicide occurs in cases, to actually continue to live after being lied on and
the court and others holds the lie as truth is like a slow death. God knew the
result of it which is why he made certain that we had written account to

study and embody to keep us from committing this sin against ourselves and others. God ultimately allowed employment and entrusted to those in Authority the ability to probe, investigate and question. This is my opinion is just a matter of fact checking. Until someone of Authority takes the time to go back and verify what the investigation that Texas Workforce Commission found and truly verify what has been allowed to happen to me, I, my daughter and dog will continue to suffer as I am the head of household responsible for taking care of us.  It's wrong and has resulted in me feeling depressed as I do not have anyone of formal education in law that will assist me. I do however thank God for his Son Jesus Christ, the Holy Spirit and the angels that have and will continue to assist me that I have to give credit to have made it this far. God knowing that I am being honest, I trust that he will back me. I am referring to the same God that we pray to, bow our head to and raise our right hand to in court.

Holder v. Ill. Dep't of Corr., 751 F.3d 486, 2014 U.S. App. LEXIS 8431, 164 Lab. Cas. (CCH) P36,224, 22 Wage & Hour Cas. 2d (BNA) 1071, 88 Fed. R. Serv. 3d (Callaghan) 590, 2014 WL 1725740

After being detailed as I was in my request for a few days off to relieve myself of the pain I was in and after exhausting all measures known and remembered on how to keep my Employer abreast and updated on when I could return, when Mr. William Quick noted via email that I should come see him once I got back, I felt I was safe. I also offered medical verification and he noted that it was not needed. I was still very much an active employee at that point, I remained out under what is known as a protective activity. Once an employer informs an employee on the direction they should take, especially written direction that's on record, employees assume that the direction is approved, given in honor, and in truth. Email exchanges over a company are monitored and record is kept. There was absolutely no doubt in my mind that I did not have approval. In the case cited above, it explains where judgment was given to the employee because in essence, the employer retroactively rescinded the leave which is illegal.

**Exodus 20:12** Honor thy Father and your Mother, so that you may live long in the land the LORD your God is giving you.

Although this scripture reads as if it is commanded us to honor our Parents for a reward of long life, it is not just a scripture written for ulterior gain. I am not close to my Father. Tearfully, I can honestly state that he has shown no real consistent interest in me over 40 + years. When I received the call that he had suffered a stroke, this scripture reminded me of how I needed to respond. I responded in love by going to see and prayed for him bedside even when it meant a 2 hr drive with a 2 hr turn around drive to get back home to preserve my job because my Manager did not usually respond to my text or phone calls. There is record in my work email account where I asked him why he didn't always respond. He replied that he did when he felt he needed to. I'm a divorced single Mother that has to provide for myself and as a only child to two ill Parents and one mentally and physically ill Mother

while taking care of my daughter and dog and responsibilities. I have found

that my Former Human Resources Rep Mr. William Quick whom is also

now a former employee of Wayfair admitted via email, (See Record

Excerpts H.#4),  that time would not of been permitted for me to take

although FMLA and the Wayfair Employee Guide clearly states that we can,

under certain conditions and after a certain time frame of being employed. In

this time frame when the email from him was sent, I did not ask for time off

to take care of either of my Parents. The email from Mr. Quick was

harassing in nature as it appeared to be a parapraxis, an unintentional

admission of the subconscious,  as if the email was preparing me for future

denials now knowing the genetic history of my Parents.

<u>Genetic Discrimination is illegal</u>.

 Weeks before, I had to reach out to 3 people to ultimately be able to leave

without infractions to go back to see my Dad in grave condition on

September 28, 2016, due to that unforeseeable absence. There was no reason

to mention that time could not be taken off to care of my parents in the email

dated October 4, 2016 that was for a completely separate request that had

nothing to do with them, at all. My request' was to take a few days off which

were "not foreseeable" as the terminology that was used in the Employee

Guide (See Record Excerpt H. #5 p.45) absences needed for emergency oral

surgery to rid myself of the pain, bleeding, swelling and regain my ability to

resume my assigned work detail yet I' was denied and subsequently

terminated. An Employee, that started with me and was promoted to the

Leadership Candidate Program by the name of Diamond Brazil was given

nearly 3 weeks to be absent after we were told her Grandmother died. As a

character reference, when we were asked in a social circle of our favorite

leisure, she responded telling us that she loved gore and horror movies. I

have mentioned before that people whom have a relaxed consciousness can

watch entertainment of such. Diamond Brazil was a fast talker, her metrics

often reflected someone who gave very few discounts. Whereas that is great

for employment/job security, it does not always balance out as a reflection of

Customer retention. Diamond Brazil cared about stats. This will suggest why

she was given nearly a month to be off, and came back and was promoted.

She, was an asset. This will establish a prima facie case of discrimination

identifying a similarly-situated employee outside of my protective class who

was treated more favorably. Absent for over 2 weeks, in one period of time,

we literally assumed she left for good.

When I contacted Tyler Smith to have the day (September 28, 2016) off to

be with my Father after his stroke, Tyler assumed my Father was deceased.

There is also record of our email exchange that I did not receive even after I

requested it where even though he assumed my Father was deceased, he only

granted me a few hrs off for the day insisting that I come back an hour

before my scheduled shift was to end. My email (Wayfair 000027) clearly

noted that my Father was in Houston on a respirator. I conveyed that I came

back to Bryan Texas to work to have my 'request to leave early" approved

in the email that was sent to Al Gonzales and Justin Brown. It was

impossible to get back in the time frame and utterly cold that I was asked to

come back that day after Tyler Smith assumed my Father was deceased.  Sir

or Ma'am, this was complete unfairness and harassment. I contacted Justin

Brown, Tyler Smith, and after contacting the 3rd person, Michael Leveroni, I

was eventually granted the day off where he apologized about the

confusion. An apology was given which supports my claim of harassment.

Keiderling v. RFM Servs., 2014 U.S. Dist. LEXIS 9734, 2014 WL 297522

**Jurisdictional Statement**

I Pro Se Toya M. Gibson appeal from (1) the June 21, 2017 Ruling and Order denying my claim. Pro Se Toya M. Gibson timely filed a Notice of Appeal, dated July 27, 2018. This Court has jurisdiction over appeal under 28U.S.C. 1291

## 2 STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Human Resources Rep, William Quick was aware that I was absent due to an oral surgery that was needed. I was very detailed in my request for unforeseeable time off.

2. Mr. Quick noted via email that I should come and see him once I got back to explore how I could be covered while out, leading me to believe that my job was not in jeopardy.

3. On October 10, 2016 I signed in and sat down at my desk under the assumption that I was going to be able to talk to Mr. Quick once he arrived, as he suggested. Instead, Mr. Justin Brown asked me how I was doing and then contacted me through the messenger and told me to come to the

conference room directly' behind my group, Team Alpha and then that is

when I was terminated. (See Record Excerpt H. #6 Wayfair 000029) It

clearly supports the fact that the humiliation I was subjected to was

intentional, no discretion to prevent me being exploited was used after the

request that was sent via Wayfair messenger to meet him, Mr. Justin Brown,

to-talk. We had another room, at least 30-50 away that was used for previous

terminations. One elderly employee by the name of Ms. Janice that sat next

to me went into the room on the opposite side and was also presumably

terminated. When she came back from the room, she sat down and

immediately brought to our attention that she "found somewhere else to

work and had to leave immediately" . She also cleared her desk in front of

all of us. Another employee by the name of Casey, that was newly pregnant,

who sat on the end was also seemingly terminated. Once I noticed that she

did not come back, I contacted Al Gonzales the facilities Manager via email

and asked could I switch my desk because I was constantly having sign-in

problems with my computer. In the initial phase of discovery I asked the

defendant to give me copies of all' of my email exchanges during my tenure. One of the emails between myself and Al Gonzales where I asked if I could move my desk to Casey's since she never came back, the same Al Gonzales that told us, the entire first group hired on at the new facility in Bryan, Texas, that we were hired on because we were "nice", was never received. I preferred to sit on the end, as I was before they made Cheryl Tabor, a Manager that started out with us to move in my seat. Please note after we moved from our first original seat of choice after we were hired, we eventually moved to the other side near the back by the "12[th] man room. Cheryl Tabor, although a Manager was told to sit with us in our row. She was originally seated in the managers row, before Justin Brown was hired on. Mr. Michael Greenfest, asked me to move from my desk where I originally chose to sit by the 12[th] Man room" and Cherly was assigned to sit there. In Christlikeness, I moved. Now that I moved to my 3rd seat, it was then that my Pc constantly received issues. That particular email will support why I moved to Casey's old desk. Again, my EEOC report that I submitted

includes a diagram that I drew up to show how the seating was arranged. I'm

asking that my EEOC report is pulled. I was very thorough since my

termination was recent suggesting that my memory was intact. After I

moved to Casey's old desk, on one Monday I came back to work and noticed

someone had signed on under another name. In the "Record Excerpts" H. #8

Page 13 of Wayfair 000070", it reads that we were prohibited to share our

Wayfair user ID and password or any other access credentials with anyone. I

didn't. Because I didn't and at the time we did not share Pc's, I questioned

how or why someone was on mine while I was away over the weekend.  I

then contacted Mr. Quick via email and asked him how and why was that

possible considering no one was suppose to use our pc's without consent and

or acknowledging it to prevent us from being held responsible for someone

else wrongdoing. Included are email exchanges of "Pc Issues" that I kept

having where each time we were expected to follow a procedure to screen-

shot issue and contact management to have them corrected to prevent points

from being taken. If we forgot or assumed Management would correct the

points taken in times where our entire facility was enduring pc issues, those points taken against us would remain. I am stating that it's possible that some of my points taken against me, were not of my fault and out of my control. I often questioned why after and until a few weeks after we were opened at the new location, we all of a sudden started to have multiple issues with our PC's but rarely before.

Getting back to me and Mr. Brown's Wayfair messenger chat, I responded and asked for direction of where to meet him, here as follows in "Wayfair 000029": "Gm, sure…where to? Same place?" assuming we were going into the conference room where we went for 1 on 1's. He insisted that the "12th man by us will work" to ensure I understood where to go. The "12th man by us" was a conference room 5-8ft way from where we, 16 employees sat , The Alpha Team, used to have pod briefings and celebrations. Please see and investigate that there was no "Final Warning" given as described on "Page 11, Wayfair 000061". Additionally, there was no "Exit Interview" found on "Page 52, Wayfair 000084" as it described, where my reaction to

Wayfair's policies and procedures which wOuLd of proved helpful to

Wayfair's evaluation of it's employment and personnel policies like that of

Mr. Quick conveying to me via email to "come see him" once I got back. We

were told that Mr. Quick came in after our assigned time of 8:30am. The last

correspondence of record that I received was from him in his email

suggesting that I meet with him to explore my options. Again, of all the text

I sent to Justin Brown daily while I was out, he never responded. The EEOC

report that I gave has screenshots of text messages from me to Justin Brown

and Alpralaila Guice.

 I am accusing Wayfair LLC, with negligent and intentional infliction of

emotional distress. The decision that was made to initially terminate me on

October 7, 2016 was not conveyed to me beforehand; in text, snail mail,

verbalized in person by someone of authority, email nor by phone. Since we

now have record that the decision was made on October 7, 2016 however I

was not made aware, it is my prayer that the courts agree that easily I could

have been contacted, as Ms. Onuora stated under oath in the (Initial

Conference) in Document 21 on page. 20 of 39 Line 20 "Yes. Every time the

Manager issues--every time an employee gets a point, the manager has to

issue a warning or issue a--". unquote. The Court goes on record on line 23

and asked "Orally or in Writing" Unquote. On line 24 Ms. Onuora

responded my stating "Well it's ---it depends on how excessive it is. At times

that they will issue it orally and document it as a documented

discussion......" unquote. Again, no one contacted me. My badge could have

been deactivated preventing me from entering the building, someone in

Management could of called me in the office before I signed in, or my Pc

privileges could have been deactivated to prevent me from accessing the

system and continuing to work' and assist customers. At that time, the

facility was operating in a 7 days a week schedule for Customer Service

Consultants, unlike when we initially were hired on. The courts had and has

record that a final decision was made, fully known , placed in-to record, by

both Human Resources Representative Mr. William Quick and Manager

Justin Brown simultaneously, a full 2 days (48hrs) plus hours later but prior

to me coming back to my assigned position to terminate me. Yet and still,  I

was expected to contact my Former Employer, in which I did immediately

after knowing I needed to be absent. Still, the 48hrs that I was held

responsible for not contacting them before my absence that was not

foreseeable was used to deny my claim. To expound on how erroneous this

appears to me,  it is impossible to contact anyone, in truth, about a medical

or any other emergency, 48 hours before, about the emergency until it

happens. Again, this points directly to flagrant and blatant harassment,

harassment that was intentional.  Yet and still, from my understanding as of

this date, Justin Brown is still an active Employee yet I was terminated. See

Record Excerpt H. #9"  Please also note, that it was Mr. Justin Brown that

gave me a hand written note a few days' before commending me on my

Character and noting that I was the light on the team. It read, "light on our

team". The hand written notes were supposed to be personal and unscripted.

Even if a employee was found to be less than what was expected, possessing

some other type of malignant character, they too should be handled with

professionalism as a model. I didn't deserve this.

4. Mr Brown stated that his reason for terminating me was because I did not put in the time at home through the portal although he knew of all the other avenues that I took to inform the company of absences while out for oral surgery and where I constantly kept them abreast as well as him daily via text message. Again, both Mr. Brown and Mr. Quick claim to be Christians. That is not behavior reflective of a Christian, neither was the statement Mr. Justin Brown made to me when he opened the door for me to leave the building after humiliating me in front of all the employees exploiting my termination. Mr. Justin Brown said "Good Luck". Christians do not believe in luck. Luck suggest that something will happen or has happened without it going through God's divine plan.

5. Justin took my badge, and made me empty out my desk humiliating me in front of all the employees on my row and some. When he walked me out, another employee by the name of Alfralalia Guice was coming in. Minutes later, by the time I got in my car she text me and asked if I was fired. That

confirmed it was not done in private and people knew.

6. Early on I was confronted by my Manager Justin Brown in a ONE-on-ONE meeting about my metrics/ return exception amount because I was giving the customers that had damaged, lost, or late deliveries discounts. 85% of the times I reached out to Senior employees before granting the discounts and I felt they were fair. As Christians we are told in scripture to do unto others as we would want others to do unto us. It reads:  Matthew 7:12 So in everything, do to others what you would have them do to you, for this sums up the Law and the Prophets. I did just that, within reason but was told I would be disciplined for it and was subsequently terminated although I followed policy and was practicing customer retention. In my 2nd phone interview, which was recorded before being hired on with Michael Greenfest, I explained that I believed in Proverbs 6: 10-11 A little sleep, a little slumber, a little folding of the hands to rest 11 and poverty will come on you like a thief and scarcity like an armed man. I told him also I need to work to take care of my daughter. I believe they knew I was Christian and

we were told that we were hired because we were nice by Al Gonzales in a team meeting. Mr. Gonzales said that you can not train people to be nice. I agree, the heart has to be changed first and it reads in Psalm 51:10 Create in me a clean heart, O God; and renew a right spirit within me.

7. I contacted the sick-call line each day to also make them aware of my absences.

8. I text Mr. Justin Brown each morning that I was out to let him know that I was going to be absent.

9. In the Texas Workforce Solutions investigation to verify if I was eligible for benefits, Justin Brown, my then Manager was asked if I followed policy and he replied with "she did".

10. Over the course of my tenure I mentioned to my manager and co-workers that my Mother was mentally ill not knowing that it would be held against me. In the email from Mr. Quick on October 4, 2016 he clearly stated that I could not take time out to be with a Parent although I did not ask. It was as if his subconscious was speaking revealing that they were going to

deny me if I asked in the future if my Parents would of became sick needing assistance.

11. Back in September 27, 2016 my Father, a disabled Army Veteran, had a stroke and I was told that he was in grave condition once I got off from work. I traveled to Houston 2 hours away to see him and returned by home in the early Morning hrs to return to work so that I could be back on time since Justin Brown was known to ignore my text messages.  Once at work, I asked Justin Brown to allow me to leave explaining that my Father was in grave condition in a coma but he was not sympathetic and warned me that I would get a mark against me if I signed off although Tyler told me that I could. It was harassing. Justin Brown did mark against me so I signed back in and  I contacted Mike Leveroni and was allowed to leave. Mr . Leveroni apologized via messenger about the conduct of both Justin Brown and Tyler in time management that told me I could leave but that I had to return back an hour before shift was to end although my Father was in Houston.

12. On another 1 on 1 with Michael Greenfest while he was training me at

my desk he asked me if I used gum in front of other employees. Yet another

harassing remark.

13. The oral surgery I needed was "medically necessary" and according to

their own written and distributed Employment Guide on page 45-46 Wayfair

states that if the need for leave is not foreseeable, then the medical

certification must be provided within 15 calendar days after it is requested,

or as soon as reasonable possible under the circumstances. I offered to bring

in medical documentation however Mr. William Quick which is no longer

with the company noted in the email that it was not necessary.

What is the appeasable issue (s)?


1. It is and was impossible to call 48 hrs before an accident that happens

which presents a need to absent.

2. Alleged 36 days absent. There is no record to support I was absent 36

days. I disagree with the amount of day recorded.

3. My Father stroke was' mentioned in the EEOC report. In the Defendant's

Motion for Summary Judgment that was granted, it notes that I failed to include my Fathers stroke as an underlying predicate for my GINA claim and therefore it claims that I failed to exhaust my administrative remedies with respect to that claim. Additionally, information about the manifestation of a disease  or disorder in an individual's family members (I.e. family medical history). Family medical history is included in the definition of genetic information because it is often used to determine whether  someone has an increased risk of getting a disease, disorder or condition in the future. I mentioned my Father had a stroke and I was eventually granted permission, after being made to go through 2 Managers,  and 2 employees over time management: Tyler Smith, Justin Brown, Al Gonzales and Michael Leveroni, after the mentioning of the stroke to be granted time off to be with him. I mentioned my Mother had Mental illness and I was allowed to go home on my lunch breaks during the summer to check on my daughter. This supports they had information about the manifestation of a disorder or disease of both Parents, which are my family members.

5. I was engaged in a protective activity. I subsequently was subjected to an

adverse employment action. There is definitely a link between the protective

activity and the adverse action. Judge Nancy Atlas determined that in the

"Initial Conference" where she plainly asked in Document 21 Page 19 of 39

Line 7-8; "Was the attendance violation related to her teeth--tooth problem,

or something else"? On line 9 Ms. Onuora responded by saying "It was

related……" unquote. If I called in one more day that was not protected, it

would of went to the 10th day which meant review. However, no additional

points should have been marked against me because I was engaged in a

protective activity. Because an Employer refuses to request medical

documentation to determine if the Employee is eligible, or refused to accept

it after it was offered, does not lessen the fact that the employee has rights

that protects them  nor does it undermine what is considered protective

activity according to law.

6. In Document 21 Page 22 of 39 Line 17 Judge Nancy Atlas states and it is noted that she wanted "depositions to be taken of each side as best one can, and then we'll see where it goes", unquote. In Document 21 Page 29 of 39 Line 18 she gives Judicial consent to allow me to ask questions to someone from the other side. Judge Nancy Atlas stated and it's definitely on record that she wanted depositions for both parties, she was well aware I was indigent. When I contacted her Clerk Sheila Ashabranner for the right to expert witness, in email she responded and said there was no funding.

I was and still am an indigent Litigant. I was not able to hire a stenographer therefore I was not able to lead a deposition. Although Judge Atlas stated for record that she first wanted both sides to have depositions then and thereafter move forward, I was not granted the benefit yet the case moved forward although not in the order she stated she initially wanted. This decision was not fair considering how imperative a deposition is in getting out what the litigants know and have record of it. Again, I was slighted.

7. Judge Atlas, for whatever reason decided that Magistrate Judge Palermo would be a good person to review this case. She went on to state in Document 21 Page. 22 of 39 Line 20 "do a little settlement conference, and see what's what". I would like to explore the word, "little". It appears a time frame was preplanned. One of my concerns was the date that was selected although accepted by me. I had no idea, initially, that the Defendant was also in court on the same day for #17-494 Wayfair Vs. South Dakota. Considering in the "Initial Conference" Judge Nancy Atlas referred to the projected conference as "little" twice before it was even scheduled or had. Seemingly, plans were being made beforehand for it to be short yet illegal actions that I felt were committed against me were cruel.

8.

Judge Atlas decided. Still, I am pleading with the courts to read, investigate and probe the entire transcript of the "Initial Conference", As I do understand that with me being on the receiving end, my perspective will vary from others. In humbleness and with great concern the language

throughout the conference suggest that my unemployment truly annoyed her, but not my termination. Continuously she suggested that I get employment as if she was not considering my reason for being unemployed as due to being terminated, ill, turned down for jobs I had applied to.

Gradilla v. Ruskin Mfg., 320 F.3d 951 *, 2003 U.S. App. LEXIS 2733, 147 Lab. Cas. (CCH) P34,659, 83 Empl. Prac. Dec. (CCH) P41,335, 2003 Cal. Daily Op. Service 1372, 8 Wage & Hour Cas. 2d (BNA) 813, 2003 Daily

Journal DAR 1789

The Courts was aware I was not contacted of my termination that could of prevented me from being humiliated. The court was aware that my appointment for October 7, 2016 was cancelled by Texas Dental and rescheduled for October 11, 2016.

My indigent status was removed. I have been owing  Pacer for fees since I was billed on 7-14-2018 that I can not afford. Being homeless at the time, continued access to my pacer account was imperative. I have found in this entire case that as much as poverty is assumed understood, many won't understand what goes on until they experience it. Not from a mock perspective which is often done to gain a surface level understanding but from the perspective of truly not having .10 cents. There one would understand the cruelty involved of having your indigent status taken away. I feel it was prematurely removed considering I filed for appeal in the time allotted. That is where it feels an abuse of discretion took place. If this was

customary after a Judgment takes place, I feel that indigent status should not be removed until and unless an indigent litigant fails to file a timely appeal and once and if they do, and it's accepted, it's my prayer for those coming behind me, that they may have access.

I am praying that those entrusted will consider all I have presented and to be presented. If it was your career, and all that you have submitted in discipline to obtain employment was yanked, I am certain all would want fairness at the very least.

Humbly, may I present some very alarming content.

I initially filed with the EEOC, Harassment, Wrongful Termination, Religious and Genetic Discrimination. I submitted a lengthily report of everything I felt was wrong about my tenure at Wayfair, the handling of my Termination and all that I, my daughter and dog have endured as a result of it. As a Christian, there is no such thing as luck nor is there a such thing as coincidence. Everything goes through God's hand. Judge Nancy Atlas presiding over my case was allowed by God and those entrusted to appoint

her. From the very beginning I have tried to present my case in Christlikeness responding to her with the utmost of respect yet the same was not offered.

Please see the "Initial Conference" Document 21 for the following:

1. Page 15 in it's entirety. In specific, I am Pro Se, that is a job. I wasn't and I'm still not 100% well. Specifically, line 19-25. Judge Atlas stated that I need to go out, as in out of her court and get a job. Read this please, she goes on to tell me to stop talking about Christianity and stop talking about my prior work. That is a huge part of my case. She was ordering me. It's not possible for a litigant to  possibly present their case in fairness, if the presiding Judge is demanding the litigant to not talk about the very issues they filled suit for. She continued to press even after I explained that I pass out at times.

Page 16 of 39 Line 4-6

She stated that my employer probably doesn't have a problem  with be being

Christian but she said "they want you to focus on work and not Christianity at the job". I believe that either this was her direct personal thoughts or she had took up the position with my Former employer conveying their defense. What's more bazaar and alarming to me, is the uttering that Judge Nancy Atlas acted as if she does not understand that a Christian can not lose focus of their religion. If we did, our conduct would be different like that of a thief. It's clear she does not understand how a Christian can't clock off from being a Christian at work and then clock back in once they get off. Likely would not be able to clearly understated how an employee could have been very well discriminated against, like I believe I was. If any employer directly told an employee, as she told me in court to not focus on being a Christian, the very core of my character,  but instead only' focus on the work, that's impossible.

Page 16 of 39 Line 18

After the constant verbal lashings of not being employed, I asked the Judge, calling her Your Honor still showing respect, that it appeared that she

thought I loved being employed.

She admits in line 21 that I was, in fact, in poverty and that she was trying to get me into a job. The tone of the conference was that of a biased one.

Page 27 of 39 AND 28 of 39

Both pages support the notion that she appeared angered and disconnected to what I presented. On page 28 line 3-5 clearly she states to all listening that she does not care. Repeating it twice, she does not care. Ending on line 4-5 that it does not matter.

I will close for now trying to present what I feel is appealable.

Thank you.

## 3 STATEMENT OF THE CASE

Wrongful Termination:

The Defendant hired me on as a Customer Service Consultant. It was agreed

between us that I needed to be fluent in my position for both my incoming

and outgoing calls to ensure that I could assist our customers effectively. I

both sold items to numerous customers as well as processed returns. I was a

loyal employee for the defendant for six months. Before I was wrongfully

terminated on October 10, 2016, while out attempting to get a tooth

extracted that had erupted, that tooth being #18, not a wisdom tooth as the

Defendant noted in, see exhibit A (Document 36 page 5 of 18), I had

contacted my former employer initially on October 4, 2016 via email

contacting Human Resources Representative William Quick and exercised

my responsibility to contact the sick call line daily, and my former manager

Justin Brown daily via text message. All entities that I could of possibly

made aware related to keeping record of employee time was contacted.

The decision was made to terminate me after I had alerted and requested

short-term time off while I was incapable of speaking to perform my

assigned duties to get an oral surgery needed to alleviate me of pain,

bleeding and the infection to enable me to speak again fluently to resume my

duties at work.


Genetic discrimination.

Wayfair was aware that my Mother was mentally ill and that my Father had

recently had a stroke. Would I potentially be a liability down the road in

regards to becoming a stroke victim or a individual that would have mental

illness as well seemingly influenced the decision. It has been noted that they have no medical evidence provided by me that supports that my Mother has Mental Illness and it was used as a means to question how authentic my claim was. I have not had to provide any proof that my Father was in fact stricken with a stroke nor has it been questioned that I am in fact a Christian but the fact that I have no medical proof presented to prove my Mother's illness was upheld.

 In my initial emails to Mr. William Quick starting on October 4, 2016, I was very detailed in the time I needed and expounded on how much I loved my job. Of what was conveyed, the mentioning of needing time off to be with my Dad or my Mom was not requested yet Mr. William Quick noted that time off for a Parent would not be granted to me. I only mentioned it to state that I was aware that I was just granted time to be with my Father because of his stroke. His stroke, like my tooth splitting were unforeseen emergencies, unavoidable but worthy of job protection. Although I did not ask him for the time off to be with my Father or Mother, this was in his subconscious. Our

subconscious tends to lead us to make decisions, even when we don't utter

the thoughts verbally. It was as if they were getting prepared for the day I

would ask for time off again to be with them. After a year tenure and had

either one of them had a major operation or something traumatic happened,

since they are my biological Parents and I am genetically linked to them, I

would have been able to be granted sometime off to be with either of them

especially considering I am their only child. Before I could even ask, if

needed, I was told "no" before hand. In "Document 36" page 13 of 18 see

exhibit C, it's noted that I was not subject to an hostile environment based on

my genetic information. After my Father had the stroke, I got off from work

and I drove 2 hrs away to Houston to see him and drove back home in the

wee hrs in the morning to get back to work. In a normal professional

atmosphere, usually when something traumatic as such happens an

employee should be able to call in for a day or so especially considering he

was in grave condition. Considering Justin Brown rarely returned text

messages, I showed back up to work the following morning and pleaded

with time management and my former manager to allow me to go back with

my Father, an army veteran. After I explained, Tyler in time management

assumed my Father was deceased and told me that he only could approve a

few hours off and I had to be back an hour before my normal shift ended.

Assuming I could go, bewildered and hurt, I signed off and was told by

Justin Brown via messenger to sign back on or he was going to give me an

ETL. In Christlikeness, I signed back on for peace. It was then that I reached

out to Micheal Leveroni via messenger and he approved the time off,

apologized for the confusion and allowed me to leave. This explains non

other than a hostile environment and actionable harassment explained in the

EEOC explanation of harassment.  Two Managers were made aware of my

Father's grave condition, and one, Tyler Smith assuming he was deceased,

yet and still, no sympathy, empathy or honoring the policy that prohibited

harassment was upheld.  Please see where someone commented online

giving Wayfair a negative review about the number of people, which the

commenter round off with 15, were terminated due to not meeting new profit

metrics despite being great in all other areas. It's pages upon pages of complaints online of terminations for reasons non other than being metrics related. The commenter goes on to note that the terminations created an atmosphere of 4stress and paranoia. I can state that I switched my seat because often when I came back from lunch break or try to sign-in in the mornings my PC would freeze causing me to be late to sign in. On one particular Monday after I was off for the weekend, I noticed that someone else had used my PC and had used their sign-on screen name. No one, at the time was allowed to use a PC unless it was assigned to them. I was so alarmed by this I emailed Mr. Quick and asked him about it.

Religious Discrimination

I am additionally requesting that my claim of being discriminated due to my religion is addressed. During a one-on-one employee manager meeting with my Former Manager Justin Brown, he told me that I was going to be disciplined for waiving too many fees and returning items. Although

commended on my character numerous times by my Managers throughout my tenure and given a handwritten positive note about my work ethic just days before I contacted HR about my need for oral surgery, I was subsequently terminated. Jesus said it this way: In Matthew 5:14-16 You are the light of the world. A city set on a hill can not be hidden. Nor do people light a lamp but it under a basket, but on a stand and it gives light to all in the house. In the same way, let your light shine before others, so that they may see your good works and give glory to your Father that is in Heaven. Please note that we were told, as a group, that we were hired because we were nice by Facility Manager Al Gonzales. He stated that "you can not teach people to be nice" unquote. I believe that I was discriminated against as a Christian. In scripture, it reads as such : Matthew 7:12 So in everything, do to others what you would have them do to you, for this sums up the Law and the Prophets. In everything, I am commanded to treat people the way I would want to be treated. I typically reached out to senior reps for their input before I waived the fees or made exceptions. Being professional, nice as was

told the reason I was hired and Christian which is my religion by assisting my customers in a manner that was reflective where discretion was given to me to make the decisions. Still, I was told I would be disciplined for exerting my right as if I did something wrong against policy.

There has been no question as to if I am really a professed Christian. Since I am stating that I am Christian in truth and the defendant has acknowledged it and not contested it, it is my prayer that the courts take into consideration that I was left to believe that I would be able to exercise my faith from the very beginning like on my second phone interview. Wayfair is an Ecommerce company that sells household goods. The majority of business is conducted by phone since it is not a brick and mortar store. It's imperative to record phone calls from customers to ensure customer satisfaction, customer retention and in cases of disputes. The satisfaction of the customer and handling of the disputes requires patience and an even tempered person. Before hired, our written test and phone mannerism was assessed. Phone calls of prospective employees were handled over speaker phone. They

monitored tone, etiquette and professionalism before hiring us. In my second

phone interview, Mike Greenfest, asked me why I wanted to work for

Wayfair. I believe I told him that I was Christian and distinctly mentioned to

him, on that particular call  that I was a single Parent that needed to work. I

went on to mention to him that in scripture,  like that of Proverbs 6:10-11

10 A little sleep a little slumber, a little folding of the hands to rest- 11 and

poverty will come up on you like a thief and scarcity like an armed man. I

explained to him that I needed to work to take care of my daughter otherwise

we would live in poverty. Not long after my employment was taken away,

me, my daughter and my dog became sickened from the mold in the

apartment we were in, due to unemployment I could no longer pay the bills

and we became homeless resulting in living out of my car, a motel one night,

with reluctant relatives and a shelter. In  (Document 36 page 13 of 18) see

exhibit C, it reads in the second paragraph that I never informed Wayfair that

religion motivated my performance. That is not true. Surely if I mentioned I

wanted to work to take care of my daughter and that I needed employment to

avoid poverty, naturally performing well was extremely important which was why I was commended in writing (see exhibit B) that I was a woman of character and conviction.

He wrote as if I was covered while I was out by requesting in the email that I come in to see him in the office once I was back. There was never any indication in our emails that my job was in jeopardy especially considering he stated in the email that " a doctor's excuse was not needed after I explained that I would surrender medical proof. I noted that my tooth was ruptured, I was in pain, needed to get an oral surgery which is considered and extraction because of the removal of the tooth. I mentioned to him that he knew how important it was to be able to speak which I was not able to do and be fluent as my job detail noted. The inability to speak while using my mouth is a physical impairment that substantially limits my speech which is considered a "major life activity" under the ADA. My job detail stated that I must be fluent. In order to be fluent and perform my duties, I would of

needed to be able to speak throughout my fulltime shift. I could not due to the bleeding, swelling, draining of the pus and the area being infected. I could not get the procedure done due to my blood pressure being too high, inability to pay the amount the first dentist wanted, the mandatory need to see my PCP for my blood pressure before getting the procedure done and then finding another Dentist to perform the oral surgery. After I found another Dentist, Dentist Espinoza, although I was scheduled to come in on October 7, 2016, he called me and told me he had to cancel my appointment and reschedule me until the following Tuesday which would have been October 11, 2016.  I could not return to work until the surgery was one and healed. This was an open office setting. We sat only 2 feet apart from each other, sometime closer. To expose anyone to the blood and pus from my mouth is dangerous. The first Dentist, John Johnson continuously coughed loudly after he examined me and all the way up until I left the office. The tooth was in a toxic state. There was no way to perform my duties without exposing others to the infected fluids. I could not be fluent.

Justin Brown never responded to any of the text messages I sent him while I was out which was typical of him. In an email exchange from our Wayfair email addresses I had asked him directly why he didn't always respond to emails and he stated that he responded when he felt he needed to. Surely if an employee was out sick, and after record would show that they asked for unplanned emergency time off, a Manager should reach out to that employee and request medical documentation before assuming the employee could in fact work before deciding on a termination. I offered medical records. Although I offered, Mr. William Quick noted that he did not need it. Had I been given that opportunity for a few days off as requested , and/or the 15 days that is supposed to be granted and noted in the employee handbook to surrender documentation for proof, my job could have been saved. The ADA does not require employees to be employed a full year in comparison to FMLA for an employee to have a few days off which is considered short term disability.

## 4. **SUMMARY OF ARGUMENT**

I, Pro Se Toya M. Gibson do not believe that I was given a fair hearing.

Although I understand that I an expected to have everything in place, as

much as possible as if I have had a formal education in law, the fact that I

am simply stating facts from Wayfair's Employee Guide, using the resources

of the Law Library, Public Library, google and books written on

employment laws was not enough to support my stance of wrongful

termination. Most importantly was all the Prayers that I have made to Jesus

and the Holy Spirit to assist me with the wisdom needed to both be pleasing

to the courts and present to the Appellee to ensure myself a fair hearing.

Still, with all the evidence in place, I feel that the facts in this case that

question the integrity of the Appellee has yet to be fully investigated and

applied to this case. I am pleading in humbleness for a second and higher

degree of Authority to investigate what I have presented in supporting that I

feel my civil rights were in fact violated and I subsequently became a victim

of Judicial misconduct.

## STANDARD OF REVIEW

I was there because of my claims…still, In the Initial Conference Document page. 15 of 39 line 16-20 the Honorable Judge Nancy Atlas reprimanded me, to get a job in front of everyone, including my Daughter as if she forgot that I was there at her mercy because I was terminated. Terminated as in, once was employed. It was as if she did not understand, even with her tenure and education the unfortunate circumstances people endure without employment or financial means for basic necessities. It was a slap in the face and felt like a dagger in my heart. Then she goes on and repeats herself, even after I told her I pass out and it was not safe for me to work yet again she states that I need to go out and get a job and told me, in the very court assigned to determine if I was discriminated against for my religion, to "stop talking about Christianity and stop talking about your prior work". I replied in line 22-23 and stated that I would never stop talking about Christianity. In line

24, Judge Nancy Atlas went on to reply "at work for a job, that's my recommendation to you".

I landed in her court, not because I was at work talking about Christianity to people. I landed there for living out my belief. If my employer told me to "stop talking about Christianity" that too would have been discriminating against me, unless I was making others feel uncomfortable and that was not the case. I gathered she was telling me to stop talking about Christianity in her court which would not of been possible. If I didn't talk about it, I could not present my case accurately. Still, I pressed forward and so did Judge Nancy Atlas. Again in Document 21 page. 16 of 39, line 15-17 she brings up again the need to be employed as if she did not believe I was not well. Additionally, in line 20-21 she mentions that she is trying to get me out of poverty and into a job. Please understand, she knows the responsibility I had on me to represent myself as Pro Se. It's no less work than an Attorney has. It's actually more arduous considering there is no formal education of law had, in my case. Additionally, I'm certain Judge Nancy Atlas is aware of the

benefit of having counsel. She even suggested that I go to Houston Volunteer Lawyers for assistance, that in which I did, again however was denied. She was also made aware that I was not well. I was living in a shelter at the time I entered her court, it's as if she did not understand or had became desensitized over the years. Terminated, ill, homeless, and told not to talk about Christianity, that in which I filled for discrimination. It was never expressed by the Defendant that I badgered employees or talked about it often at work. She demanded that I stop talking about it. How else was I going to expound on how I felt discriminated against for being Christian? God knew my thoughts still, after she expressed the need and demanded that I silence talk about my belief, this set the tone early on of the perspective I felt she had over my case. In respect of Christianity, and what I believe in I only responded by telling her that I would never stop talking about Christianity.

In Document 21 page. 18 line 18-21 she mentions that she is not Christian but believes in the same principles and beliefs. If I a Christian,  was a Judge,

given the Authority and entrusted with the discretion to appoint an expert

witness to an indigent, divorced, single, unemployed, Mother of a minor,

that claims to be ill, was presently homeless, and was commended on her

Character from the defendant-litigant , in my court presenting themselves as

Pro Se, surely as a Christian, I would of.  That is where the thought that

others can have the same principles and ethnics yet not issue relief to

another,  that they have possession of is differentiated. If the tables were

turned, I am certain that she would of assumed I would of granted any and

all the relief to her that was legal. I sincerely appreciate what she did in fact

give consent for that has aided me.


Page 12 line 21-23 I mentioned to her that I could not speak. She stated that

she understood  and stopped talking. Then said "okay"  and stopped talking

again. She then started back talking and then asked if I had anything else I

wanted to tell her about my employment although she had just told me to

stop talking about my prior employment. I believe that Judge Atlas really did

understand that I could not speak to perform my job duties which is why she

moved on. We moved on and again on page. 13 0f 39 in line 17-18 I

mentioned that the issue that I was having prevented me from speaking. In

line 24 she stated "okay" and that we'll consider that as part of the claim.

On page 19 of 39, on line 11 Mrs. Onuora stated that I had reached the final

level before I took the days off. The Final warning comes after the written

warning. I was given the written warning on September 21, 2016. On

September 22, we discussed the written warning. On October 04, 2016 when

I initially emailed Mr. William Quick, he did not express to me that my need

that I requested for a few days off would cause them to go straight to Review

for Termination and ultimately terminated me while I was out with them

having full knowledge of why I was absent. I was supposed to be asked for

medical documentation.

Ms. Onuora, stated under oath that I took the days off without notifying the

company properly, however the Texas Workforce Commission investigation

to determine if I was eligible noted that there was no misconduct found on my part. Mr. Justin Brown also stated that I did in fact follow policy. This report was on record.  Judge Atlas asked Ms. Onuora if I just didn't show up, you mean?" Ms. Onuora replied by saying, "pretty much". When I rose my hand to interject, Judge Nancy Atlas stopped me claiming that she gave me lots of time. She then told me to put my hand down, and I complied and got quiet out of respect of her position that was entrusted to her.

Shelia Ashabranner noted via email that there was no funding available for expert witness. I took her word as that of one that was in truth. Therefore although Judge Atlas asked if I wanted to have one and I later reached out to her clerk, I assumed I had no one choice but to move forward that in which I did.

I was there because of my claims…still, In the Initial Conference Document page. 15 of 39 line 16-20 the Honorable Judge Nancy Atlas reprimanded me, to get a job in front of everyone, including my Daughter as if she forgot that

I was there at her mercy because I was terminated. Terminated as in, once

was employed. Then she goes on and repeats herself, even after I told her I

pass out and it was not safe for me to work yet again she states that I need to

go out and get a job and told me, in the very court assigned to determine if I

was discriminated against for my religion, to "stop talking about Christianity

and stop talking about your prior work". I replied in line 22-23 and stated

that I would never stop talking about Christianity. In line 24, The Honorable

Judge Nancy Atlas went on to reply "at work for a job, that's my

recommendation to you".

I landed in her court, not because I was at work talking about Christianity to

people. I landed there for living out my belief. If my employer told me to

"stop talking about Christianity" that too would have been discriminating

against me, unless I was making others feel uncomfortable and that was not

the case. I gathered she was telling me to stop talking about Christianity in

her court which would not of been possible. If I didn't talk about it, I could

not present my case accurately. Again in Document 21 page. 16 of 39, line

15-17 she brings up again the need to be employed as if she did not believe I was not well. Additionally, in line 20-21 she mentions that she is trying to get me out of poverty and into a job. Please understand, she knows the responsibility I had on me to represent myself as Pro Se. It's no less work than an Attorney has. It's actually more arduous considering there is no formal education of law had, in my case. I was living in a shelter at the time I entered her court. Terminated, ill, homeless, and told not to talk about Christianity, that in which I filled for discrimination. How else was I going to expound on how I felt discriminated against for being Christian. I prayed before I came and I was aware that God knew my thoughts still, after she expressed the need and demanded that I silence talk about my belief, this set the tone early on of the perspective I felt she had over my case. In respect of Christianity, and what I believe in while secondly but also acknowledging the authority that was entrusted to her, I only responded by telling her that I would never stop talking about Christianity.

In Document 21 page. 18 line 18-21 she mentions that she is not Christian

but believes in the same principles and beliefs. If I a Christian, was a Judge, given the Authority and entrusted with the discretion to appoint an expert witness to an indigent, divorced, single, unemployed, Mother of a minor, that claims to be ill, was presently homeless, and was commended on her Character from the defendant-litigant , in my court presenting themselves as Pro Se, surely as a Christian, I would of. I sincerely appreciate what she did in fact give consent for that has aided me.

Page 12 line 21-23 I mentioned to her that I could not speak. She stated that she understood and stopped talking. Then said "okay" and stopped talking again. She then started back talking and then asked if I had anything else I wanted to tell her about my employment although she had just told me to stop talking about my prior employment. I believe that Judge Atlas really did understand that I could not speak to perform my job duties which is why she moved on. We moved on and again on page. 13 0f 39 in line 17-18 I mentioned that the issue that I was having prevented me from speaking. In

line 24 she stated "okay" and that we'll consider that as part of the claim.

On page 19 of 39, on line 11 Mrs. Onuora stated that I had reached the final
level before I took the days off. The Final warning comes after the written
warning. I was given the written warning on September 21, 2016. On
September 22, we discussed the written warning. On October 04, 2016 when
I initially emailed Mr. William Quick, he did not express to me that my need
that I requested for a few days off would cause them to go straight to Review
for Termination and ultimately terminated me while I was out with them
having full knowledge of why I was absent. I was supposed to be asked for
medical documentation. Even after I offered via email, I was told there was
no need.

Ms. Onuora, stated under oath that I took the days off without notifying the
company properly, however the Texas Workforce Commission investigation
to determine if I was eligible noted that there was no misconduct found on
my part. Mr. Justin Brown also stated that I did in fact follow policy. This

report was on record.  Judge Atlas asked Ms. Onuora if I just didn't show up, you mean?" Ms. Onuora replied by saying, "pretty much". When I rose my hand to interject, Judge Nancy Atlas stopped me claiming that she gave me lots of time. She then told me to put my hand down, and I complied and got quiet out of respect of her position that was entrusted to her.

Shelia ashabranner noted via email that there was no funding available for expert witness. I took her word and moved forward.

## ARGUMENT

In humbleness and with respect of the Law, I am asking for another review of the facts presented in this case. I did not have the same leverage as the Appellee in presenting my case, I feel at the very least it should be

considered if there are laws that protect Pro Se litigants that were not upheld like the Constitutional Right to Expert Assistance for Indigents in Civil Cases which was denied. Again, in Matthew 7:12 we are commanded to see ourselves on the receiving end to truly understand if we are in fact being right to others if the roles were reversed. If not, the outcome may very well be different for me as well as those coming behind me. If the Appellee is able to not honor the very Employment Guide that was given to others that I received and believed that they would honor, it's likely they will repeat.

## 6. CONCLUSION

I, Pro Se Toya M. Gibson appreciated the opportunity to gain employment with the Appellee when in fact I trusted that they were always going to adhere and honor all that was told to me both in person and in writing as to how to remain and grow with the company. I could of applied to any other company yet I applied to Wayfair in good faith. Mr. Conine and Mr. Shah

were inspirations. I trusted my employer and I do not believe they truly understood at the time what employment meant to me. To have it taken away, resulted in my family living out of my car, (See Record Excerpts H. #11) in a shelter, taking showers in truck trailers, and loosing my health and dental insurance. Although losing my employment, apartment, insurance, and a list of other things that have occurred and impacted my family's life for the worse, both Mr. Shah and Mr. Conine have continuously excelled financially, both now Billionaires. Where I believe in and know what hard work can bring, by no means am I stating that they don't deserve the benefits of their harvest. Still, I'm proud of their success. What I am pleading with Jesus and the courts to consider is, should I of been terminated? The question of if I followed policy was answered in the state of Texas investigation. The answer was, "SHE DID". Please know consideration given on my behalf will be greatly appreciated.

Relief Sought:

**J.**

1.Lost wages: After 3 years 1 month (to date) at 14.00hr        82, 880.00

14hrx8hrs a day= 112.00x5+560.00x4=2240.00x37=


2. Earning Capacity: According to SSA.gov retiring at age 67   645,120.00

I'm presently 46, Hired at age 43. Retirement age is 67. That would have

been 24 years of service at 26, 880.00 a year


3. Inability to service car 2009 Camry, no longer operable:    50,000.00

I'm obese, now an SUV is needed, especially with a disabled Parent.


4.Inability to eat properly, weight gained. New Clothes and a Personal

Trainer        20, 000.00

Now Pre-diabetic. I can no longer fit any of my clothes due to weight gain.

I'm in desperate need of a Personal fitness trainer.

5. Lost and damaged storage containing irreplaceable items, collections: 30, 000.00

6. Lost of hair due to stress and inability to see a beautician       10,000.00
A Woman's hair is her glory. The amount I am asking is to seek professional help with re-growth.

7. Furniture damaged from having to move                        25, 000.00

8. Fired in front of others/ Humiliated                        150, 000.00
As so long as I live, I will never forget the humiliation involved especially the smirk on Justin Brown face as he waved goodbye to me and motioned for me to leave out the door for all to see. Before I got off the property, Afralaila Guice text me and asked was I fired. This confirmed what I assumed, they all knew.

9. Lived in shelter after becoming homeless                    50, 000.00

We stayed with reluctant relatives, in a motel once and out of my car. Then,

a shelter from September 17, 2017 to September 29, 2017.

10. After being fired we Became ill from apartment/ medically documented

100,000.00

Not having the finances, we had to stay longer in the molding apartment. We

were sickened. She was diagnosed with reactive airway disease and I was

diagnosed with Acute bronchitis. I had not been able to go to church in 4

Months due to the coughing. As fate would have it again, we reside in a

similar dwelling.

11. Depression from effects of unemployment                    50,000.00

Unemployment and being on assistance after' being terminated has an

overwhelming presence of stigma attached.

12. Constant harassment by Social Service                40, 000.00

Since I have the title of being a terminated employee, multiple caseworkers

continuously made it difficult for me. There is so much stigmatism attached

to "needing assistance" .


14. Effects of Lost of health/dental insurance           20, 000.00

My teeth are decaying. My health is deterioration.


15. Future Pain and suffering                           100,000.00

My credit…my credit has suffered. Not even having enough money to buy a

Happy Meal, for my child. So much more painful memories some too

embarrassing to share.


16. Request for an Offer                    00.00 Free

As a Christian, we are commanded in Matthew 18:15 to go to our brother or

sister in Person if we feel they have trespassed against us. On September 11, 2017 in writing, to the Defendant however through their Counsel I was told they were not willing to offer anything. If I did not know the Lord Jesus I would of given up.

17. Loss of shelter due to unemployment

200,000.00

I believe it's only fair to have a home I love. In Wayfair's promise, it reads that Wayfair believes that everyone should live in a home they love. I agree.

18. 8th Commandment "Thou shall not bear false witness against your neighbor" . Libel, a published false statement that is damaging. 200,000.00 Wayfair is a two-person company. Niraj Shah and Steve Conine are Billionaires. Both have been aware of the cruelty involved surrounding my termination and this drawn-out lawsuit that also involved a child and a dog. As a Christian, I love them in spite of it all. I'm asking that they both, separately pay the total amount.

Total: 2,590,120.00 x 2=  5,180, 240.00

This is the relief I am seeking.

Additionally, I am requesting the "Maximum Chargeback Potential" from Texas Workforce Commission.

Negligent intentional infliction of emotional distress occurred when they did not contact me before terminating me to prevent me from being humiliated. In prayer and in faith,  I submit this record.

X _____

Toya M. Gibson

## 7.  Certificate of Service

# Case #18-20511

# Certificate of Service:

Date Mailed:

June 25, 2019

Name of Parties:

Wayfair LLC

Attn: Mr. Esteban Shardonofsky

Seyfarth Shaw LLC

700 Milam Street

Houston, Texas 77002

## 8 Certificate of Compliance

This motion complies with the word limit of Fed. R. App. P 27(d)(2)(A)

because, excluding the parts exempted by Fed. R. App. P. 32(f), it contains

13000 words. This motion complies with the requirements of Fed. R. App. P.

32(a)(5) and Fed. R. App. P. 32(a)(6) because it has been prepared in a

proportionally spaced typeface using Microsoft Word 2010.

Pro Se Toya M. Gibson

X

6/25/ 2019